UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
- - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

    Plaintiff,

 v.

KAUSHALKUMAR CHAUDHARY,

    Defendant.

_____/

No. 1:24-cr-108

Hon. ROBERT J. JONKER
U.S. District Judge

## PLEA AGREEMENT

This constitutes the plea agreement between Kaushalkumar Chaudhary and the United States Attorney's Office for the Western District of Michigan. The terms of the agreement are as follows:

1. <u>Defendant Agrees to Plead Guilty</u>. Defendant agrees to plead guilty to the Indictment. The Indictment charges Defendant with conspiracy to commit wire fraud in violation of Title 18, United States Code, Section 1349.

2. <u>Defendant Understands the Crime</u>. In order for Defendant to be guilty of violating Title 18, United States Code, Section 1349, the following must be true: (1) two or more persons conspired, or agreed, to commit the crime of wire fraud, that is, to use wire communications in interstate or foreign commerce to knowingly and intentionally carry out a scheme to defraud others of money or property through material misrepresentations or concealment of material facts; (2) Defendant knowingly and voluntarily joined the conspiracy. Defendant is pleading guilty because Defendant is guilty of the conspiracy charge described above.

3. <u>Defendant Understands the Penalty</u>. The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1349, is the following: 20 years of imprisonment; a 3-year period of supervised release; a fine of $250,000, or twice the gross gain or gross loss resulting from the offense, whichever is greater; and a mandatory special assessment of $100.

4. <u>Assessments, Restitution, Other Criminal Monetary Penalties, and Financial Cooperation</u>.

    a. <u>Assessment</u>. Defendant agrees to pay the special assessment on the day of sentencing.

    b. <u>Restitution</u>. Defendant acknowledges the Court will order restitution as required by law. Defendant agrees that a crime against property under Tile 18 gave rise to this plea agreement. Pursuant to Title 18 U.S.C. Section 3663A(a)(3), Section 3663A(c)(2) and Section 3663(a)(3), Defendant agrees to pay restitution for losses to all victims, including victims of the count of conviction and victims of uncharged relevant conduct in which Defendant has been involved, including all victims of the fraud schemes described in the factual basis and all similar schemes in which the defendant was involved, including those occurring before or after the scheme described herein. This includes victims who have not yet been identified or who are otherwise unknown to the government. The parties currently believe that the applicable amount of restitution is approximately $550,000.00, but recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing. The Court will determine

the final amount at sentencing. Defendant agrees to pay restitution to the fullest extent possible at or before the time of sentencing by submitting funds to the Clerk of Court.

    c.    <u>Financial Cooperation</u>. Defendant also:

        i. agrees to fully and truthfully complete and return the financial disclosure form the U.S. Attorney's Office provides, including any waivers, consents, or releases requested to access records to verify the financial information within 30 days of the date of this plea agreement;

        ii. agrees that any restitution or other criminal monetary penalties imposed by the Court shall be due and payable immediately, any payment plan set by the Court represents a minimum payment obligation, and the United States may immediately enforce the judgment in full; and

        iii. agrees that prior to sentencing and until criminal monetary penalties are paid in full, he will not sell or give away any asset worth $5,000 or more, without first notifying the U.S. Attorney's Office. Defendant also agrees to notify the U.S. Attorney's Office of any proceeding, such as foreclosure or divorce, that may impact Defendant's financial condition.

    5.    <u>Removal from the United States</u>. Defendant understands that the conviction in this case may subject Defendant to removal from the United States, denial of citizenship, and/or denial of admission to the United States in the future.

    6.    <u>Asset Forfeiture and Financial Accountability</u>. Defendant agrees to disclose to law enforcement officials the whereabouts of, the Defendant's ownership

interest in, and all other information known to Defendant about, all assets, money or property of any kind, derived from or acquired as a result of, or used to facilitate the commission of Defendant's illegal activities. Defendant agrees to assist and cooperate in the recovery of all monies, property, or assets derived from, or acquired as a result of the offense charged in the Indictment Defendant further agrees to forfeit all rights, title, and interest in and to such items.

Defendant agrees to entry of a forfeiture money judgment in favor of the United States in an amount to be determined by the Court and that represents the proceeds Defendant obtained as a result of his commission of the offense charged in the Indictment.

Defendant consents to the forfeiture of substitute property pursuant to 21 U.S.C. § 853(p). Defendant acknowledges that the proceeds he obtained, directly or indirectly from his participation in the conspiracy to commit wire fraud, were commingled with personal assets and spent on daily living expenses and other personal expenditures and cannot be located upon the exercise of due diligence; have been transferred or sold to, or deposited with, a third party; and have been placed beyond the jurisdiction of the court.

The parties further agree that Defendant should receive credit against the forfeiture money judgment sought by the United States for all funds Defendant pays as restitution with the Clerk of the Court prior to the time of sentencing. Accordingly, for all funds the Defendant deposits with the Clerk of the Court as restitution prior

to sentencing, the Government will move for a commensurate reduction in Defendant's forfeiture money judgment.

The U.S. Attorney's Office agrees to submit a restoration request to the Department of Justice Money Laundering and Asset Recovery Section for the application of any proceeds from such forfeited property towards Defendant's restitution order. Defendant acknowledges that the Department of Justice Money Laundering and Asset Recovery Section has the sole authority to grant or deny the restoration request and that the submission of such a request by the U.S. Attorney's Office does not guarantee that such request will be granted.

7. <u>Factual Basis of Guilt</u>. Defendant and the U.S. Attorney's Office agree and stipulate to the following statement of facts which need not be proven at the time of the plea or sentencing:

> From a time unknown but from beginning no later than in or about June 2023, to in or about July 2024, Defendant agreed with M.S., and others known and unknown, to carry out a wire fraud conspiracy originating in India and other places within and outside the United States targeting primarily elderly victims in the United States. As part of the conspiracy, individuals in India, and co-conspirators within the United States, used the internet, email platforms like Google's Gmail, and cellular phone communications to contact victims. During these communications, the co-conspirators made materially false representations to the victims through a variety of fraud schemes. These schemes included that the victim's social security account number had been compromised, that they were under federal investigation for money laundering or drug trafficking, or some other false reason as to why the victim should convert his or her financial holdings into cash, gold and/or silver. The co-conspirators regularly misrepresented to the victims that they were members of the Federal Bureau of Investigation, Federal Trade Commission, Federal Communications Commission, or other government agencies or law enforcement and that they could assist the victims in protecting their money.

On many occasions, Defendant's co-conspirators directed the victims to mail them cash or to wire money to the U.S. Money Reserve to convert their funds into gold or silver. Once the victims agreed to convert their financial holdings into cash, gold and/or silver, the co-conspirators contacted Defendant through WhatsApp (a messaging platform) and cellular telephone calls and directed Defendant to travel to the victims' homes or a defined meet-up location to pick up the cash, gold and/or silver. The co-conspirators then directed Defendant to take the fraud proceeds to designated locations. Co-conspirators at these locations then paid Defendant his share of the proceeds and transmitted the remaining fraud proceeds to the co-conspirators within and outside of the United States.

In early July 2024, Victim D.M.H. wired approximately $70,000.00 from her credit union in the Western District of Michigan to the U.S. Money Reserve located outside of Michigan, to purchase gold at the direction of the conspirators. At a later date, on or about July 31, 2024, co-conspirators outside the United States directed Defendant to travel from Chicago, Illinois, to Battle Creek, Michigan, within the Western District of Michigan. Co-conspirators, including M.S., provided Defendant with the address and directions to victim D.M.H.'s home through WhatsApp communications that traveled in interstate commerce. Defendant picked up what he believed was $100,000 in gold bars from the victim at her home before he was arrested.

As part of the conspiracy, Defendant additionally picked up fraud proceeds from the following currently identified victims as part of his participation in the wire fraud conspiracy. Defendant agrees that his involvement with these victims as part of the conspiracy constitutes relevant conduct for his sentencing pursuant to U.S.S.G. § 1B1.3:

| Date (on or about) | Victim | State |
| --- | --- | --- |
| 6/26/2023 | S.G. | Ohio |
| 7/12/2023 | M.R. | New York |
| 8/9/2023 | J.K. | Illinois |
| 9/11/2023 | S.W. | Wisconsin |
| 10/12/2023 and 10/14/2023 | L.J. | Illinois |
| 11/7/2023 | T.B. | Illiniois |
| 7/16/2024 | M.W. | Kansas |
| 7/22/2024 | D.E. | Iowa |
| 7/31/2024 | J.B. | Indiana |

8. <u>Acceptance of Responsibility</u>. The U.S. Attorney's Office agrees not to oppose Defendant's request for a two-level reduction of his offense level for acceptance of responsibility under Section 3E1.1(a) of the Sentencing Guidelines. However, the U.S. Attorney's Office reserves the right to object to Defendant's request if it subsequently learns of conduct by Defendant that is inconsistent with the criteria set forth in the Commentary to Section 3E1.1. Should the Court grant a two-level reduction as provided herein, the Government will move the Court to grant an additional one-level reduction if the adjusted offense level is 16 or greater pursuant to Section 3E1.1(b).

9. <u>Non-Prosecution Agreement</u>. The U.S. Attorney's Office for the Western District of Michigan agrees, except for crimes of violence and criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371), not to further prosecute Defendant for violations of 18 U.S.C. § 1349 (conspiracy to commit financial fraud) or 18 U.S.C. § 1343 (wire fraud) arising out of Defendant's participation in the conspiracy described in the factual basis above. Defendant understands that the U.S. Attorney's Office is free to prosecute Defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement.

10. <u>The Sentencing Guidelines</u>. Defendant understands that, although the United States Sentencing Guidelines (the "Guidelines") are not mandatory, the Court must consult the Guidelines and take them into account when sentencing Defendant. Defendant understands that the Court, with the aid of the presentence

report, will determine the facts and calculations relevant to sentencing. Defendant understands that Defendant and Defendant's attorney will have the opportunity to review the presentence report and to make objections, suggestions, and recommendations concerning the calculation of the Guideline range and the sentence to be imposed. Defendant further understands that the Court shall make the final determination of the Guideline range that applies in this case, and may impose a sentence within, above, or below the Guideline range, subject to the statutory Choose an item. penalties described elsewhere in this Agreement. Defendant further understands that disagreement with the Guideline range or sentence shall not constitute a basis for withdrawal of the plea.

11. The Parties Jointly Agree to the Following:

a. Stipulations Regarding Guideline Factors. Defendant and the U.S. Attorney's Office agree and stipulate to the following applicable Sentencing Guidelines factors:

| Base Offense Level | 7 | USSG § 2B1.1(a) |
|---|---|---|
| Specific Offense Characteristic – sentencing loss of more than $550,000* | At least +14 | USSG § 2B1.1(b)(1)(H) |
| Specific Offense Characteristic – substantial part of fraud committed from outside the United States and/or sophisticated means | +2 | USSG § 2B1.1(b)(10)(B) or (C) |
| Adjustment – Chapter 3 – Vulnerable Victims | +2 | USSG § 3A1.1(b)(1) |

*At this point, the parties dispute the total amount of loss caused by Defendant's role in the conspiracy. Defendant contends that the loss caused by his jointly undertaken criminal activity is more than $550,000.00, but does not exceed $1,500,000.00. The government agrees that the loss is more than $550,000.00, but is uncertain of the upper limit of the sentencing loss because its investigation of the sentencing loss associated with the victims identified in the factual basis above and other victim leads disclosed to Defendant at the time of this plea agreement continues. The government has informed Defendant that it is possible that the sentencing loss could exceed $3,500,000.00, resulting in an additional 4-level increase to his sentencing guidelines, but that the final sentencing loss amount may not be determined until the sentencing hearing based on additional facts that come to the attention of the parties.

Defendant and the U.S. Attorney's Office each reserve the right to argue that additional specific offense characteristics, adjustments and departures are appropriate, notwithstanding that the parties have not stipulated to their scoring. The government has informed Defendant that it believes that additional specific offense characteristics will likely apply, including: 10 or more victims or substantial harm to 1 or more victims (USSG § 2B1.1(b)(2)(A)); and, false representations that the conspirators were acting on behalf of a governmental agency (USSG § 2B1.1(b)(9)(A)).

      b.    <u>Stipulations Regarding Criminal History</u>. There is no agreement as to the Defendant's criminal history or criminal history category.

c.  <u>Stipulations Not Binding in Court</u>.  The Defendant understands that neither the United States Probation Office nor the Court is bound by any stipulation in this agreement, and that the Court, with the aid of the presentence report, will determine the facts and calculations relevant to sentencing.  Both the Defendant and the U.S. Attorney's Office are free to supplement the facts stipulated to in this agreement by supplying relevant information to the United States Probation Office and the Court, and to correct any and all factual misstatements relating to the calculation of the sentence.  Defendant understands that if the Court finds facts or reaches conclusions different from those in any stipulation contained in this agreement, Defendant cannot, for that reason alone, withdraw his guilty plea.

12. <u>Waiver of Constitutional Rights</u>.  By pleading guilty, Defendant gives up the right to persist in a plea of not guilty and the right to a speedy and public trial by jury or by the Court.  As a result of Defendant's guilty plea, there will be no trial.  At any trial, whether by jury or by the Court, Defendant would have had the following rights:

a.  The right to the assistance of counsel, including, if Defendant could not afford an attorney, the right to have the Court appoint an attorney to represent Defendant.

b.  The right to be presumed innocent and to have the burden of proof placed on the Government to prove Defendant guilty beyond a reasonable doubt.

  c. The right to confront and cross-examine witnesses against Defendant.

  d. The right, if Defendant wished, to testify on Defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

  e. The right not to be compelled to testify, and, if Defendant chose not to testify or present evidence, to have that choice not be used against Defendant.

  f. By pleading guilty, Defendant also gives up any and all rights to pursue in this Court or on appeal any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

 13. <u>Waiver of Appellate Rights</u>. Defendant gives up his right to appeal his conviction, sentence, or any other matter relating to this prosecution on any ground.

 14. <u>FOIA Requests</u>. Defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

 15. <u>The Court is not a Party to this Agreement</u>. Defendant understands that the Court is not a party to this agreement and is under no obligation to accept

any recommendation by the U.S. Attorney's Office or the parties regarding the sentence to be imposed. Defendant further understands that, even if the Court ignores such a recommendation or imposes any sentence up to the maximum established by statute, Defendant cannot, for that reason, withdraw his guilty plea, and he will remain bound to fulfill all of his obligations under this agreement. Defendant understands that no one—not the prosecutor, Defendant's attorney, or the Court—can make a binding prediction or promise regarding the sentence Defendant will receive, except that it will be within the statutory maximum.

16. <u>This Agreement is Limited to the Parties</u>. This agreement is limited to the U.S. Attorney's Office for the Western District of Michigan, and cannot bind any other federal, state or local prosecuting, administrative or regulatory authority. This agreement applies only to crimes committed by Defendant. This agreement does not apply to or preclude any past, present, or future forfeiture or civil actions.

17. <u>Consequences of Breach</u>. If Defendant breaches any provision of this agreement, including any promise of cooperation, whether before or after sentencing, the United States shall have the right to terminate this agreement, or deny any or all benefits to which Defendant would otherwise be entitled under the terms of this agreement. In the event that the United States elects to terminate this agreement, the agreement shall be considered null and void, and the parties shall return to the same position they were in prior to the execution of this agreement, as though no agreement ever existed. In such an event, Defendant shall remain liable for prosecution on all original charges, and the United States shall be

free to bring such additional charges as the law and facts warrant. Defendant further agrees to waive and forever give up his right to raise any claim that such a prosecution is time-barred if the prosecution is brought within one (1) year of the breach that gives rise to the termination of this agreement.

18.   **This is the Complete Agreement.**  This agreement has been entered into by both sides freely, knowingly, and voluntarily, and it incorporates the complete understanding between the parties. No other promises have been made, nor may any additional agreements, understandings or conditions be entered into unless in a writing signed by all parties or on the record in open court.

19.   **English Version of Agreement Controls.**  Defendant agrees that, if there are any discrepancies between the English version and the Gujarati translation of this agreement, the English version controls.

20.   **Deadline for Acceptance of Agreement.**  If a copy of this agreement, executed by Defendant and defense counsel, is not returned to the U.S. Attorney's Office by 12/13/2024, this agreement will be withdrawn automatically and will thereafter have no legal effect or force, unless the U.S. Attorney's Office, in its sole discretion, chooses to accept an executed agreement after that date.

12/12/24
Date

MARK A. TOTTEN
United States Attorney

*for* RONALD M. STELLA
Assistant United States Attorney

I have read this agreement and carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. No promises or inducements have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

12/10/2024
Date

_____
KAUSHALKUMAR CHAUDHARY,
Defendant

I am Kaushalkumar Chaudhary's attorney. I have carefully discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

12/10/2024
Date

_____
NICHOLAS V. DONDZILA
Attorney for Defendant

14