UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

v.

KAUSHALKUMAR CHAUDHARY,

      Defendant.

Case No. 1:24-cr-108

HON. ROBERT J. JONKER

United States District Judge

**DEFENDANT'S SENTENCING MEMORANDUM**

Defendant, Kaushalkumar Chaudhary, requests a sentence below the advisory guideline range.  There is no dispute that Mr. Chaudhary has zero criminal history category points.  Pursuant to the terms of the plea agreement, the parties largely agree on the base offense level and various enhancements.  However, the parties disagree regarding the application of a 2-level offense level enhancement under USSG §2B1.1(b)(9)(A).

**STATEMENT OF FACTS AND PROCEDURAL HISTORY**

The Presentence Investigation Report provides a detailed description of the events giving rise to the instant offense.  Mr. Chaudhary was involved in a widespread scheme to defraud individuals of large sums of money.  However, is it doubtful Mr. Chaudhary was aware of the full nature and extent of the conspiracy and overall fraud, evidenced by the amount of loss attributable to him compared to the overall loss determined by law enforcement.

Generally, conspiracy members would contact victims claiming to be government officials or members of law enforcement. The victims were told, for varying reasons, that they owed large sums of money. Victims were instructed to liquidate bank accounts, retirement accounts, and other holdings and convert these monies into cash, gold, or silver. Victims were further instructed to package the money/gold for pick up by another member of the conspiracy.

Mr. Chaudhary was one of the individuals that picked up packages. He was given general locations, such as a city, with more specific directions the closer he came to where the package was located. Mr. Chaudhary arrived at the destination and either picked up the package or met with the individual to receive the package.

Mr. Chaudhary often took videos of him opening the package in his vehicle. He did so for his own protection to prove to those higher in the conspiracy that he did not tamper with the package or take any of the contents for himself. It is also not disputed that Mr. Chaudhary received little money for his participation, particularly in comparison to the loss attributable to Mr. Chaudhary.

Unfortunately, many of the victims were elderly and, thus, more susceptible to the fraud. However, Mr. Chaudhary did not call victims to defraud them into withdrawing money. His role was limited to picking up packages. This is significant because the true nature and extent of the conspiracy was not foreseeable to Mr. Chaudhary. The loss attributable to Mr. Chaudhary is significantly less than the total loss associated with the conspiracy for this reason.

## I.    LEGAL STANDARD.

Under *United States v. Booker*, 543 U.S. 220 (2005), this Court shall consider several factors in determining a defendant's sentence.  After scoring the guideline range, and "after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the [18 U.S.C.] § 3553(a) factors to determine whether they support the sentence requested by a party." *Gall v. United States*, 552 U.S. 38, 49-50 (2008).  As explained in *Kimbrough v. United States*, 552 U.S. 85, 101 (2007), 18 U.S.C. §3553(a) contains an overarching instruction to impose a sentence sufficient, but not greater than necessary to accomplish the sentencing goals set forth in §3553(a)(2).

### 1. *Nature and circumstances of the offense and the history and characteristics of the defendant.*

#### a. *Nature and circumstances of the offense.*

Mr. Chaudhary committed a very serious offense.  He was part of a criminal enterprise that defrauded elderly people into giving large sums of money to coconspirators.  The victims were led to believe they owed large sums of money to entities or governmental agencies.

Mr. Chaudhary's involvement was undeniable.  He was caught red-handed.  After a victim notified law enforcement about being defrauded, the Battle Creek Police Department surveilled Mr. Chaudhary as he picked up what he believed to be a package of gold.  Unbeknownst to Mr. Chaudhary, the package was filled with phony items.  Law enforcement immediately conducted a traffic stop and recovered the fake package, along with other incriminating items.

Mr. Chaudhary was subsequently taken into custody.  He was interviewed with the benefit of an interpreter.  Mr. Chaudhary confessed to his involvement in the conspiracy.  However, despite his best efforts, Mr. Chaudhary was unable to identify the names of his coconspirators, or their whereabouts, during his confession or during subsequent discussions with law enforcement.

### b.  *History and characteristics of Defendant.*

The Presentence Report accurately describes Mr. Chaudhary's background. He was raised in a stable home in India.  His parents remained married until his father died of COVID in 2022.  His father had a successful career in the Army working as an engineer.  Mr. Chaudhary maintains a strong relationship with his mother and sister who both live in India.

Mr. Chaudhary was studying to become an engineer.  He was involved in a serious motor vehicle accident.  He was in a comma for 15-20 days.  This accident impacted his education, and he did not complete his engineering degree.

At some point, Mr. Chaudhary came to the United States.  He did not obtain citizenship and remained in the country illegally.  He ultimately settled down in Chicago.  He obtained employment at a Wingstop.

Mr. Chaudhary presents with many redeeming qualities.  He is intelligent, thoughtful, and personable.  He possesses the skills and traits to lead a law-abiding life, albeit not in the United States.  While in custody, he would benefit from all vocational services.  Upon release from custody, it is expected that Mr. Chaudhary would put these skills to use and stay out of the criminal justice system.

## 2. *The need for the sentence imposed.*

Under this section, the Court should take into account:  (1) the seriousness of the offense, to promote respect for the law, and to provide a just punishment for the offense; (2) to afford adequate deterrence to criminal conduct; (3) to protect the public from further crimes of the defendant; and (4) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.  18 U.S.C. § 3553(a)(2)(A)-(D).

Mr. Chaudhary recognizes the seriousness of the offense.  He confessed to law enforcement following his arrest.  He again admitted to his wrongdoing by entering a guilty plea.  Society benefits from the Court imposing consequences on Mr. Chaudhary for his conduct.  From a macro perspective, there is a need for general deterrence based on the nature of the conduct and vulnerability of the victims.

However, there is less of concern regarding specific deterrence. Mr. Chaudhary has zero criminal history category points.  The fact that he is an illegal alien is problematic, but he was generally a law-abiding citizen otherwise.  He maintained gainful employment at Wingstop and maintained a strong relationship with his mother and sister in India.

Based on Mr. Chaudhary's background, he would greatly benefit from all educational and vocational training.  By all accounts, he is very capable of obtaining gainful employment.  He was at one time an engineering student in India.  However, his future is now in the balance.  Given the current political landscape, it is unknown

if, or more likely when, he will be deported.  Nevertheless, Mr. Chaudhary would benefit from gaining vocational skills for when he is released from custody.

### 3. *The kinds of sentences available.*

The maximum sentence for Count 1 is not more than 20 years of imprisonment. The Court can also impose a fine of not more than $250,000.  (ECF No. 6).  The Court must impose a term of supervised release of not more than three years.  *Id*.

### 4. *The kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines.*

The guideline range is disputed based on the Court's application of USSG §2B1.1(b)(9)(A).  If the enhancement applies, the guideline range is 63-78 months.  If the enhancement does not apply, the guideline range is 51-63 months.  In either event, the guideline range is in Zone D.

### 5. *Pertinent policy statements issued by the Sentencing Commission.*

Mr. Chaudhary is not aware of any applicable policy statement regarding the offense of conviction.

### 6. *The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.*

Mr. Chaudhary agrees that a sentence sufficient but not greater than necessary is appropriate given the facts and circumstances of the offense and his background.

### 7. *The need to provide restitution to any victims of the offense.*

Mr. Chaudhary agrees that the restitution figure is substantial. The victims in this case were mostly elderly individuals. Based on the victim impact statements, the losses greatly impacted their financial well-being.

## II. ADDITIONAL INFORMATION IN SUPPORT OF A SENTENCE CONSISTENT WITH THE FACTS OF THE CASE AND APPLICABLE GUIDELINES.

Mr. Chaudhary is in a very difficult position. This is his first contact with the criminal justice system, and the stakes are high. He is facing years of incarceration, followed by supervision. However, he may be facing a more serious consequence in the form of deportation. Mr. Chaudhary does not know what his future holds.

The imminent threat of deportation is concerning to Mr. Chaudhary for several reasons. First, he is returning to a country that he has not resided in for some time. Short of his relationships with his mother and sister, his ties to India seem limited.

Second, Mr. Chaudhary is deeply worried about being located near his coconspirators. Discovery materials suggest the individuals higher up in the chain of command employed violence to secure on-going participation in the conspiracy. One such video shows someone being tortured in the form of repeated stabbing. Images like this were likely designed to keeper lower-level participants like Mr. Chaudhary from leaving the conspiracy. Now, Mr. Chaudhary faces a return to India where the dangerous individuals are located.

At a minimum, Mr. Chaudhary was micro-managed when picking up packages. He was gradually given more specific instructions on the location of the victim/package as he neared the destination. It is not hard to conclude that Mr.

Chaudhary's limited knowledge about the conspiracy and its greater scope was deliberate. He was told where to go, when to go, and what to do.

Based on the foregoing, various objections to the presentence investigation report were considered. A minor role departure under USSG §3B1.2 was analyzed and discussed with Mr. Chaudhary. On the one hand, it cannot reasonably be disputed that he held one of the lowest positions in the conspiracy. He was a foot soldier that executed one of the last phases of the scheme – picking up the packages. While a vital role, he was not one of the leaders, either in India or domestically. He did not initiate the conspiracy, he did not call the victims, he did not make threats to victims, and he did not control how much money was demanded or where it went.

However, Mr. Chaudhary's role was still meaningful. Had he only picked up a few packages, a departure would have been warranted. His on-going activity, and the amount of loss attributable to him, make a downward departure troublesome. Nevertheless, the more favorable facts regarding his role are still noteworthy and should be considered in the context of a downward variance.

Additionally, a 2-level reduction under USSG §4C1.1 was contemplated. Mr. Chaudhary has zero criminal history category points. However, the amount of loss attributable to Mr. Chaudhary is not de minimus. It is difficult to argue that Mr. Chaudhary's conduct did not contribute to substantial financial hardship to the victims. See, USSG §4C1.1(a)(6). The financial impact on the victims considering their age complicates this analysis.

Finally, Mr. Chaudhary has demonstrated a full acceptance of responsibility. He confessed to law enforcement upon his arrest.  He then pled guilty.  Mr. Chaudhary also attempted to cooperate.  He met with law enforcement and tried to point them in the right direction regarding the whereabouts of coconspirators.  Even when given the opportunity to help himself, Mr. Chaudhary was unable, but not unwilling, to provide information beneficial to the investigation.  Mr. Chaudhary is trying to dig himself out a hole, but it has not been easy.

Mr. Chaudhary is learning a very serious lesson, and it is expected that he will not find himself in this situation again.  He is 29 years old.  Upon release from custody, Mr. Chaudhary has a full life to live, albeit on unknown terms.  He needs vocational training to maintain gainful employment and to distance himself from the negative influences that brought him into the present situation.  The Court should take all these factors into consideration.

### 1.    Objection to Presentence Investigation Report.

There is one objection to the scoring of the advisory guideline range.  The initial draft of the report did not contain this enhancement.  (ECF No. 37, PageID.101-102). Following the objection process, this enhancement was added.  The Court should find that Mr. Chaudhary's sentence should not be increase by 2 levels under USSG §2B1.1(b)(9)(A).

U.S. Sentencing Guideline Section 2B1.1(b)(9)(A) calls for a two-level enhancement "[i]f the offense involved a misrepresentation that the defendant was acting on behalf of a charitable, educational, religious, or political organization, or a

government agency." USSG §2B1.1(b)(9)(A). Section 2B1.1(b)(9)(A) "requires only that the offense 'involve' a misrepresentation" about a governmental agency, "not that the investors be misled or otherwise motivated by the misrepresentation." *United States v. Treadwell*, 593 F.3d 990, 1008 (9th Cir. 2010).

Here, Mr. Chaudhary's total offense level should not be increased by 2 levels. It is undisputed that Mr. Chaudhary did not call the victims or make requests for money. It is doubtful that Mr. Chaudhary had any contact with victims other than picking up packages. This rules out that he made direct misrepresentations that he, or members of the conspiracy, were working on behalf of the government.

The issue is whether Mr. Chaudhary knew that coconspirators were making misrepresentations. The government relies on videos extracted from Mr. Chaudhary's phone which depict him filming the opening of packages. At least one such video has a governmental agency name on a package.

However, Mr. Chaudhary took videos of the packages for a specific purpose. He wanted to prove to coconspirators that he had not tampered with the packages or taken any of the contents for himself. Mr. Chaudhary was not taking specific note of the addresses or names on the package. Rather, he was simply trying to preserve his safety. Considering Mr. Chaudhary's low-level position, along with the manner in which he was fed information to pick up packages, his knowledge of the means in which victims were defrauded is in question. Without more, the Court should not apply Section 2B1.1(b)(9)(A).

## CONCLUSION

WHEREFORE, Defendant, Kaushalkumar Chaudhary, respectfully requests that this Court impose a sentence below the advisory guideline range for the foregoing reasons.

DONDZILA LAW, PLLC

Date: June 16, 2025              By:    */s/ Nicholas V. Dondzila*
                                        Nicholas V. Dondzila
                                        Attorneys for Defendant
                                        PO Box 728
                                        Ada, MI 49301
                                        (616) 970-0931
                                        nickdondzila@gmail.com

11